may proceed. Good morning. May it please the court. Sitting here throughout the session here today, I think this case might be the least complex case that the court has heard today, but I don't think that detracts from the importance of this case. This is a case involving Edwin Salinas, who was convicted as being a drug mule when he was stopped with a co-defendant in South Dakota with approximately seven kilograms of fentanyl. This is the second time that this case has been appealed. The first time, this court vacated the sentence because District Judge Kornman had relied on facts that were not supported in the case for the evidence, Ian fashioning his sentence. We are here today for the same reason, more or less. At the jury trial, the co-defendant testified against Mr. Salinas. There was testimony regarding a conversation that occurred during transport in the Marshall's van. Did Edwin say anything to you during that transport? I got close to him and asked him a question. What did you ask him? That why he was doing this to me, why he was doing this to me, why he was saying that a backpack was mine when it wasn't. How did he respond? He answered that I shouldn't have pointed him out. What did you understand that to mean? Well, I was kind of afraid because I felt like a threat because he said, you should have never pointed that backpack towards me. Who else would have said the backpack was because I saw him with it? Did he respond? He never answered. He only said that I should never have pointed at him. This is a case involving two people, both claiming the backpack is not mine. The backpack is mine based on threatening the co-defendant. However, nothing in that dialogue can be construed as a threat. Basically, it's your backpack. No, it's not. It's yours. That's not a threat. That is not obstruction of justice. There's nothing there to try to induce the co-defendant to not testify on behalf of the government. Now, the co-defendant did receive a substantial benefit for pointing the finger at my client. I believe she got approximately 24 months on a sentence and I believe she's already out. If we wanted to second guess the district court's determination that this statement was a threat, is that a clear error standard? What type of review is it? Your Honor, I would believe it would be the same standard as... Well, I believe it would be an abuse of discretion. However, in looking at the other cases that have addressed the... I would say it's probably an abuse of discretion. Well, it's abuse of discretion if you're talking about the application of the guideline, right? The question is, there's a finding of fact here laced in with it too, and so the finding of fact is that it's a threat. Now, threat is a legal conclusion in one sense. It's a factual conclusion in another sense. So, if it's a threat, ordinarily we'd say, well, we'll decide that on a clear error review and we'll apply the threat... Once we think it's a threat, then we apply an abuse of discretion onto the application of the guideline. But it's tougher because threat is both in the guideline and it's a fact. And so I think the question... You thought this case was simple. Yeah. That question's hard, except it might not be very hard because Kornman said, I'm going to sentence you to the same thing no matter what. And the question about... Then I will follow up on it because that's a really unfair thing that I've pointed out. I mean, I want you to tell me why you know it's an abuse of discretion because I know you know that. But the second thing is, why isn't it all harmless because of Kornman's statement? Okay. Well, first of all, this is my first case. In federal court in the first place, I took over this case from my law partner who became a judge. So I was not involved in the trial level. Now, you can tell me I'm wrong under federal law. But under state law, when they are reviewing a mixed question of fact and law, that's actually a de novo review in the South Dakota Supreme Court. If that's not the standard here, then that's not the standard. But as for the harmless error situation, Judge Erickson, one of the things that the court has to look at as to whether or not it was an appropriate sentence is whether or not the court relied on an improper factor. And as this court previously ruled that when the judge found that he thought that these drugs were intended for the Lake Traverse Indian Reservation, which was not supported by the evidence, then that is an error that affected the sentencing. In the same context, in this case, the court repeatedly referred to this threat as a basis for why he gave the defendant 365 months. When he puts it in the sentencing transcript, he refers to threats against his co-defendant. In the statement of reasons for the sentence, the very last paragraph of document RDoC 239, the court says that the defendant was not threatened. The court found that the defendant threatened the co-defendant and placed her in fear. He says that this is one of the reasons, this is an aggravating factor as to why I gave the defendant 365 months. Well, he didn't look at any of the other factors. First, if it's an erroneous conclusion that the defendant made on the grounds that the defendant was a threat or committed obstruction for the enhancement, it is also error to rely on the conduct that has been misapprehended as a threat to impose a sentence that was imposed. At this point in time, unless there's any direct questions, I would like to reserve the remainder of my time for rebuttal. Mr. Parsons. Thank you, Your Honor. May it please the Court and my friend, Mr. Lund. On the sentencing enhancement, the case that just came out last month, Tyus, makes clear that it's reviewed only for clear error, the fact-finding, and the Court gives great deference to the decision to apply it. And it applies when a defendant willfully obstructed or attempted to obstruct justice or threatened or intimidated or otherwise unlawfully influenced a witness. And here in April of 2023, on the way to the motion to suppress hearing, in the middle of this prosecution of two people, they're in a car together in United States Marshals' custody, and Ms. Gonzalez, the co-defendant, says, why are you blaming me for your backpack? And the response was, you should have never pointed that backpack towards me. So he knows she pointed it towards him. He knows. He knows she's cooperating because he knows what she's told the government. They're into this litigation, prosecution, well into it. They're co-defendants, and he says, you should never have pointed that backpack towards me. The district court who observed her testify at trial and the sentencings, presided over the sentencing, said that Salinas was and continued to attempt to threaten the co-defendant, was attempting to frighten her so she wouldn't be testifying against him. The backpack was the central evidence at trial. That was the drugs. Judge Corman also took issue with the idea that he was a simple mule, Salinas. Found that he was a leader, in a sense, director of this entire thing, was the contact with the cartel boss, Hefei, was constantly directing and on his phone and knew what he was doing about this. This was not, when he was delivering these drugs, this was not a simple mule. But on the question whether the obstruction enhancement should apply, that is very good evidence. You're never going to rarely get someone in a marshal's vehicle say, I'm going to kill you if you keep testifying against me. That's not how it happens. The threats are implied. You should not have pointed that backpack at me. And the result was her fright and her terror and all of those circumstances. It's all contextual, as the cases say. If the context can, by any jury, a reasonable person or reasonable judge be interpreted as a threat and makes that finding that it was, that's given extreme deference. And all the factors that, of the context, show that this was directly intended to influence it. It was right before a hearing. He knew she was cooperating. It was on the way to the courthouse, in the middle of this prosecution, and she, the response was terror on her part. The cases supported... Robertson Can you address the harmless error issue here? I think Mr. Lund argues that even if it was, if this was error, and this was not a threat, that we couldn't find harmless error because the Court relied on this conduct in forming the sentence. Kagan Well, the Court's permitted to rely on all conduct in assessing its sentence under 353, 355, 3553A. And it's not a threat. It's not a threat. It's not a threat. And so it was entirely proper for Judge Corman to do that regardless of whether the enhancement was applied. And, but the Court said that I would give this sentence under that section in any event. I would give this, and it was a within-guideline sentence. Whether the enhancement applies or not, it was still within the sentencing guidelines. If you didn't apply the enhancement, it's at the top end of the range. If you apply the enhancement, it's at the bottom end of the range. But it's presumptively reasonable in any event. And the judge made specific findings on whether this was a substantively reasonable sentence. Considering all the nature and circumstances of the offense, selling 7 kilograms of fentanyl, the most ever discovered in South Dakota, one of our largest drug seizures, enough to kill half a million people, half of our population, in the state, a cartel operation from California for mass distribution in the Midwest, counterfeit oxygen pills, a lot of this fentanyl was, which justifies an enhancement in and of itself, one elevated sentence. He was not a dupe. He was not a mere mule. He was a leader. He was directing things. He never admitted responsibility. Never cooperated. The Court found that this sentence was necessary for the protection of the public and deterrence to reflect the seriousness of the offense. Cartel-linked fentanyl, which was recently named a weapon of mass destruction by the administration, this is the most lethal substance you can imagine. And he's threatening her. And he's entitled to make that assessment himself, at least in the sentencing context, in terms of whether it's a reasonable sentence. Judge Corman certainly believed this was a threat and reasonably so. So this fell within the guidelines, and I suggest there's no basis for reversal in any event. I would just briefly talk about the Emmert decision on the obstruction, which they've relied on. There, it was just a very generalized saying. Be quiet. Stay strong. Here, it was directly related to the evidence in the case she was cooperating on and pinning on him. Much more specific, and we have evidence of the reaction, terror. We ask this Court affirm. What was that evidence? The evidence that her testimony, that she was afraid, that this caused fear in her when she heard it. She knew what he was talking about. Thank you, Your Honor. Thank you. I want to start where Mr. Parsons left off. The victim, the co-defendant's fear. The co-defendant's self-serving testimony at trial, but it is also wholly irrelevant as to whether or not obstruction occurred. This is because the obstruction enhancement is a willful, intentional act. The outcome is irrelevant. It happens the moment he says the words that constitute the threat. Her actual subjective feelings, whether true or not, are irrelevant to this analysis. The question here is whether or not the statements that allegedly occurred, because we cannot get an audio recording of the Marshall vehicle, that this conversation ever actually occurred, whether or not it is too vague of a statement in order to say that this was a threat. Now, as for the Emmerich situation, the government just argued that the Emmerich was more broad than the alleged defendant's statements in this case. Remain quiet. Don't say anything. How is that less vague than the conversation that allegedly happened between Mr. Sullivan Salinas and Ms. Gonzalez? It's not. So under Emmerich, if telling a witness to be quiet, stay strong, isn't obstruction, then the comments allegedly made by Mr. Salinas are not at all obstruction. And again, when it comes down to what was actually said, there's a lot of ways to interpret that. Both sides are claiming innocence. You point the finger at me saying it's your backpack. No, you should never point that at me. It wasn't mine. There are lots of ways of interpreting this conversation. None of them arise to the level of being a threat. They try to bring in circumstances of the other circumstances of the case, but we have to look at the statement. What's he saying there? And you can't say it's a threat. Thank you. My time is up.